UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,

v. 12 Cr. 120 RJS

NICOLAS EPSKAMP, a/k/a
Sealed Defendant 2,

Defendant.

------------------------------x

February 23, 2015
9:40 a.m.

Before:

HON. RICHARD J. SULLIVAN,

District Judge
and a jury

APPEARANCES

PREET BHARARA,
United States Attorney for the
Southern District of New York
SHANE T. STANSBURY,
IAN PATRICK McGINLEY,
ANNA MARGARET SKOTKO,
Assistant United States Attorneys

LAW OFFICE OF LONDON & ROBIN,
Attorneys for defendant Epskamp
IRA D. LONDON, Esq.
AVROM JEROME ROBIN, Esq.
Of counsel

Also Present:
JOSEPH THOMPSON, Special Agent DEA
BRANDON DeSHIELDS, Paralegal U.S. Attorney's Office
JENNIFER HANSMA, Paralegal U.S. Attorney's Office
YEKATERINA FOMITCHEVA, Paralegal London & Robin

(In open court; jury not present)

THE COURT: Let's just take appearances since this the first day of the trial.

(Case called)

THE COURT: Welcome. Please have a seat, all of you.

MR. LONDON: Your Honor, may we approach at sidebar on a CJA issue?

THE COURT: That is fine. I am pausing for a second. The paralegal you have is Mr. Thompson?

MR. STANSBURY: Mr. Thompson is the agent.

THE COURT: Mr. Thompson is the agent? Agent Carrera is who you listed.

MR. STANSBURY: Mr. Thompson is taking the place of Agent Carrera, who will be going down to Colombia with the attorneys.

THE COURT: That kind of screws up my questionnaire.

MR. STANSBURY: Sorry, your Honor.

THE COURT: Mr. Thompson's first name is?

MR. STANSBURY: Joseph.

THE COURT: Joseph? All right.

Let's do this over here.

(By Order of the Court, Sidebar Conference is Sealed)

(In open court)

THE COURT: Let's talk about any outstanding issues we need to resolve. I think one of the main issues on my mind was

where we stand with Mr. de Jongh in Germany. Any developments or news on that front?

MR. LONDON: Mr. Luebke, the German prosecutor, has been totally unresponsive. We phoned him. We have e-mailed him as recently as the weekend, and he has not responded in any way. So we would like to just place our objection to the lack of response from the German government to our request to CCTV Mr. de Jongh's testimony.

THE COURT: All right. Well, I have no control over them, obviously, but what do you propose we do at this point?

MR. LONDON: May I have a moment, your Honor?

THE COURT: Yes.

(Off-the-record discussion)

MR. LONDON: Your Honor, the only thing I can think of, we have done everything we can do, and I might add the government even put an inquiry out to him. The only thing I can think of, if the court might reach out to him.

THE COURT: I am not sure how I would reach out for him. You mean make a call? I think, look, generally these things have to be done through proper channels. I sometimes issue requests for assistance, and I guess I did one of those in this case, but I don't know that I can pick up the phone and give him a call. Actually, Jerry, all I am getting is code.

(Pause)

THE COURT: You were proposing that I give sort of an

informal call to the German prosecutor?

MR. LONDON: An e-mail might do.

THE COURT: Does the government have any views on this? You have been in touch with the prosecutor?

MR. STANSBURY: As you recall, this came up at the last conference, and you asked that we reach out if the defense requested, which they did. We immediately sent an e-mail to the prosecutor, our contact over there. We have not heard from defense counsel until now about --

MR. ROBIN: Excuse me. I am sorry. The client is having trouble hearing Mr. Stansbury.

THE COURT: Yes. Make sure you keep your voice up and try to speak into the microphones, either that one there or the one at the desk.

MR. ROBIN: Thank you.

MR. STANSBURY: We did reach out. It appears that there was no progress, but we frankly have not heard anything from defense counsel since that day.

THE COURT: Which was when?

MR. STANSBURY: Which was at the last conference when it came up.

THE COURT: The last conference?

MR. STANSBURY: We are happy to make another call directly if your Honor wants, but I am not sure that we can do more. As you know, we did everything we could to make the Rule

15 deposition happen, and the defendant abandoned that motion. I am not sure how responsive they're being given all of that.

THE COURT: Well, I guess if you are having informal communication with the prosecutor, I suppose it doesn't hurt to just make a follow-up call. If you think there is some prohibition for you to do that or for the court to do that, then I guess it wouldn't be appropriate.

Do you have a view as to whether you or the court, on behalf of the Government of the United States, defined broadly, can be pick up the phone and call a German prosecutor about testimony in a U.S. case?

MR. STANSBURY: Our view has always been it should go through the proper channels. This is a defense motion, it should go through letters rogatory just as the Rule 15 motion went through letters rogatory.

However, we've indicated to the defense all along if there is anything we can do to help facilitate communication, we are willing to do that because we happen to have a direct line of communication to the German prosecutor through the Office of International Affairs, and since the diplomatic channels are aware of this communication, we didn't mind doing that. We are happy to make another call if it is appropriate.

THE COURT: I certainly have no objection to anybody communicating to officials with whom they're speaking that the court is inquiring whether or not we're going to be having

testimony from a witness who is in German custody. If that much helps, Mr. London, certainly you can convey my questions in that regard and the same for the government lawyers, okay?

I am a little reluctant to sort of pick up the phone because I am not sure that that is something that judges can or should be doing, but I'll think about that as well, okay?

MR. LONDON: Thank you.

THE COURT: Are there other issues we should be resolving before the jury gets here?

MR. LONDON: There is one other issue I want to put on the record. We earlier joined in co-defendant Watson's objection and motion to dismiss the indictment based on jurisdiction. We join in that motion. We simply wish to preserve our objection to the jurisdiction issue.

THE COURT: All right. I think the motion, you made the motion. I don't think it is compromised. You have made your record.

MR. ROBIN: One more issue, Judge?

THE COURT: Yes, that is fine.

MR. ROBIN: This is a timing issue.

The government and the defense have been working very closely to move this trial along really quickly. We have done, to me, what seems like a really large number of stipulations. Now our concern is that with the government and I going Wednesday to interview the witness in a foreign, in a foreign

country, that the government's case conceivably -- we don't know for sure -- could conclude on Thursday. Our request is that summation, defense case, if any, and summation not happen until Monday when Mr. Stansbury and I are back.

Now, I know that, you know, that may leave a half a day empty Thursday afternoon if things move along really quickly, but we're asking your Honor to work that into the schedule. I know you're very rigorous about not wasting the jury's time, and we appreciate that. We have done everything to move that along in ways we can, but we are afraid it might work against us here.

THE COURT: Let me just be clear since the government has more control over its case than you do. Hold on one second.

(Pause)

THE COURT: All right.

MR. ROBIN: Could I just finish my --

THE COURT: Yes. I was going to ask them to tell me when they think they're likely to rest?

MR. McGINLEY: Thank your Honor. Good morning.

I believe the way we think it will play out now is the testimony in the foreign country will be on Wednesday. Possibly it bleeds over into Thursday morning, but probably not. Then there may be some 404 (b) testimony that day.

THE COURT: From witnesses?

MR. McGINLEY: From witnesses here in the United States.

THE COURT: Right.

MR. McGINLEY: And then we could be in a position then when the government rests.

THE COURT: What is the earliest you think you'd be resting?

MR. McGINLEY: The earliest we would rest would be probably mid-morning or around noon on Thursday.

THE COURT: All right. What the defense is asking is that I then send the jury home and tell them not to come back until Monday.

MR. McGINLEY: We join in that request. It is essentially we don't close while Mr. Robin and I are in the air. That would be a joint request. I am, for whatever it is worth, I am scheduled to give the closing argument. I know we are all fungible, government attorneys, but it would be our preference, if it pleases the court.

THE COURT: Normally I think you are fungible, but I don't think Stansbury is up to it. We can do that, all right?

MR. ROBIN: Thank you, Judge.

THE COURT: Okay. That was a "yes"?

MR. ROBIN: Yes.

THE COURT: I noticed Agent Carrera is here. Will he be introduced to the jury as well? He is on the list.

MR. STANSBURY: I don't see any reason to introduce him to the jury.

THE COURT: He will be testifying or not?

MR. STANSBURY: At this point, it is doubtful.

THE COURT: If he is here when the jury is getting picked and somebody recognizes him and asks? I will ask whether you recognize anybody else in the courtroom, so that probably would trigger a raised hand if anybody does recognize him.

The way I have it before, he was listed as the person at counsel table, and Agent Thompson was listed as a witness or a person whose name might be mentioned during trial. Is Mr. Thompson going to be testifying?

MR. STANSBURY: He is.

THE COURT: But Mr. Carrera is not going to be testifying?

MR. STANSBURY: It is doubtful. There is a slight possibility he will. In an abundance of caution, it might not be a bad idea to mention his name, but he is in the courtroom.

THE COURT: I think I will do that.

When the jury comes in, what I'll ask for anybody who is in the courtroom who is not with the jury panel, with the venire, move to the far right side of the back of the jury room. I am not sure if there will be a lot of people at that point, but Agent Carrera, if you would do that. Otherwise, we

would get you another chair up here and you could sit up at the front table if you want.

All right. So other issues? I heard there was something with respect to openings you had questions on?

MR. STANSBURY: Your Honor, just a technical matter. We plan to use two exhibits during the opening. We know the jury has screens, but we were hoping for a larger screen and we were wondering if we could move this piece of equipment over towards the jury?

THE COURT: I don't know if it is that easy to move. Normally you folks are responsible for your own screens. I don't know how much rope there is for that screen to move. It is generally there for the gallery, which I am not sure how many people will be in the gallery. That is what it is usually there for.

MR. STANSBURY: There appears to be a connection over here. If we can talk to the technical folks during a break?

THE COURT: All right. I don't mind you using a screen, but I think the problem with the screen, if you're going to push it way up here, it can block the view of the jury and the parties.

MR. STANSBURY: We were going to move it right there.

THE COURT: That might work. You will use two exhibits? What are the exhibits?

MR. STANSBURY: I can hand them up to your Honor.

THE COURT: Defense counsel has seen the exhibits?

MR. STANSBURY: They have.

MR. ROBIN: Yes, sir.

THE COURT: No objection to them using them?

MR. ROBIN: No objection.

THE COURT: Okay. You can hand that back. I think we can probably work with those logistics. I don't think we will be opening before lunch. I am virtually certain of that. Whatever logistical and technical maneuvers you need to make for openings, why don't you plan on doing that between roughly 1:00 and 2:00.

MR. STANSBURY: There is one other logistical issue. I haven't been in this courtroom for trial. Are you planning on doing the examination from that podium over there or will that be moved over here?

THE COURT: No. We'll use the lectern there with the microphone there. The lectern, I generally have you move that back to where you're about even with the last juror, and the microphone will move back with you so that will be what you use.

MR. STANSBURY: Is it possible for examination purposes to use that lectern with the screen so we can view the exhibits?

THE COURT: The problem is you can't really see the witness if you're using that lectern. I know some courtrooms

have the equivalent of that lectern over here.  That, of
course, blocks the access of the jury.  The courtroom is a 1935
courtroom, and so it wasn't built with the technical issues
that we sometimes encounter here, but I think it works best to
use that.  Sometimes you can set up a laptop or use that screen
in a way that allows you to access it from where you are.

        MR. STANSBURY:  Okay.

        THE COURT:  Plan on doing that, okay?

        MR. STANSBURY:  Okay.

        THE COURT:  If there is an Elmo in the large lectern,
if you need to use that, the best thing to do is walk over or
have one of your colleagues or the paralegal manning the Elmo.

        MR. STANSBURY:  Okay.

        THE COURT:  All right.  Anything else from the
defense?

        MR. ROBIN:  No, your Honor.

        THE COURT:  We'll call to see where we are with the
jury, but I expect it will probably be 20 minutes or so.  In
the meantime, you can stretch your legs, get a drink of water.
Once the jury is on its way, we'll let you know.  I will step
off, but I'll just be in the robing room.

        (Jury selection was reported but not ordered to be
transcribed)

        (Court adjourned until Tuesday, February 24, 2015)